## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| **Michael Drayton,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:24cv795 (PTG/IDD)** |
| | ) | |
| **Director of the VA Dept. of Corrections,** *et al.,* | ) | |
| **Respondents.** | ) | |

### <u>MEMORANDUM OPINION</u>

Michael Drayton ("Mr. Drayton" or "Petitioner"), a Virginia inmate proceeding *pro se*, filed a civil action, pursuant to 28 U.S.C. § 2254. Dkt. 1. Mr. Drayton's original petition did not comply with Local Civil Rule 83.4(A) of the Eastern District of Virginia, and he was directed to file an amended petition. Dkt. 5. Mr. Drayton filed an amended petition on June 10, 2024, which challenged the validity of his January 16, 2020 convictions in the Circuit Court for the City of Alexandria, Virginia, for assault by mob, robbery by mob, simple assault, and petit larceny. Dkt. 6. On November 25, 2024, Respondent Director of the Virginia Department of Corrections ("Respondent") filed a Rule 5 Answer and a Motion to Dismiss, with a supporting brief and exhibits. Dkts. 24–29. On December 2, 2024, in accordance with *Milla v. Brown*, 109 F.4th 222 (4th Cir. 2024), the Court advised Mr. Drayton of his right to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Dkt. 32. Mr. Drayton filed several pleadings and motions in response: a brief in response to Respondent's Motion to Dismiss, Dkt. 36; a motion seeking to declare his convictions void, Dkt. 37; two motions to expand the record, Dkts. 38, 42; a motion to amend his "assignment of errors," Dkt. 40; and a motion for release on bond "while

this Court considers his petition," Dkt. 41.[1]  Accordingly, this matter is now ripe for disposition.[2]

For the reasons that follow, Mr. Drayton's motions must be denied, Respondent's Motion to

Dismiss must be granted, and the petition will be dismissed with prejudice.

## I. Pending Motions

Mr. Drayton's responses re-argue his claims and his "actual innocence," and reiterate his

requests: (1) for discovery, expansion of the record to include his motion to vacate (based on the

absence of a probable cause affidavit), and consideration of the affidavit of Nicole S. Geter; (2) to

appoint him counsel; (3) to amend the petition to consider a due process violation (violation of the

rule on witnesses); and (4) to be released on bond.  Dkt. 36 at 6, 8, 9, 11, 16; Dkts. 37, 38, 40, 42.

To the extent his brief in opposition and other pleadings are duplicative of each other, they will be

addressed together.

### A.  Discovery, Expansion of the Record, Evidentiary Hearing

Before Respondent filed his Motion to Dismiss, Mr. Drayton filed a motion requesting: (1)

Respondent disclose the content of telephone calls made to Mr. Drayton's trial and appellate

counsel (Samuel C. Moore, Sebastian Norton), and a witness (Nicole S. Geter); (2) discovery

pursuant to Rule 6 of the Rules Governing Section 2254 Cases ("Habeas Rule"), regarding "a

*Brady* Violation"; (3) an evidentiary hearing; (4) to expand the record under Habeas Rule 7

because exculpatory evidence exists; (5) a subpoena to Respondent's counsel if she does not

disclose the exculpatory evidence; and (6) appointment of counsel.  Dkt. 22.  Mr. Drayton has

---

[1] Prior to Respondent's Motion to Dismiss, Mr. Drayton also filed a motion "to Promptly Disclose Evidence; 2) for Discovery; 3) for Evidentiary Hearing; 4) to Expand Record Under Rule 7; 5) for Issuance of Subpoena Under Rule 6; and 6) for Assigned Counsel."  Dkt. 22.

[2] Mr. Drayton filed a motion for documents to establish that he had paid the docketing fee, Dkt. 17, which is moot because the fee was paid, Dkt. 15, and the motion will be denied.

reiterated most of these motions in his brief in opposition. The motions lack merit and will be denied.

First, Mr. Drayton's requests 1 through 5 concern discovery and an evidentiary hearing. Habeas petitioners in federal court, however, are "not entitled to discovery as a matter of ordinary course." *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009) (citations omitted).[3] Habeas Rule 6, which governs requests for discovery, requires "reasons for the request" and "good cause," including "specific allegations suggesting that the petitioner will be able to demonstrate that he is entitled to habeas corpus relief." R. 6, Rules Governing Section 2254 Cases U.S. District Courts; *Stephens*, 570 F.3d at 213. Here, Mr. Drayton defaulted his claims in state habeas and because he "has not shown cause and prejudice or fundamental miscarriage of justice permitting [their] consideration on federal habeas," he cannot demonstrate that discovery would entitle him to habeas relief. *Royal v. Taylor*, 188 F.3d 239, 249 (4th Cir. 1999); *see Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009) (no abuse of discretion in denying discovery on procedurally barred claims because petitioner cannot establish that he is entitled to relief). Accordingly, Mr. Drayton's Motion for Discovery (Dkt. 22) is denied.

---

[3] Importantly, Mr. Drayton's Motion for Leave to Conduct Discovery does not address the limitations the Anti-terrorism and Effective Death Penalty Act ("AEDPA") places upon federal review. AEDPA limits review under § 2254(d)(1) "to the record that was before the state court that adjudicated the claim on the merits" because the language of the statute is "backward-looking" and "requires an examination of the state-court decision at the time it was made." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011); *see Elmore v. Ozmint*, 661 F.3d 783, 850 (4th Cir. 2011) ("[O]ur § 2254(d)(1) review is generally confined to the record that was before the state [] court."); *see also Jackson v. Kelly*, 650 F.3d 477, 492 (4th Cir. 2011) ("[W]hen a habeas petitioner's claim has been adjudicated on the merits in state court, a federal court is precluded from supplementing the record with facts adduced for the first time at a federal evidentiary hearing.") (citing *Pinholster*, 563 U.S. at 182–83). Here, although exhausted and defaulted, the circuit court addressed the merits of Mr. Drayton's ineffective assistance claims, in state habeas, and his sufficiency claims were addressed on direct appeal. *See infra* at 14–17.

A motion to expand the record under Habeas Rule 7, is committed to the discretion of this Court. *See Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988). A habeas petitioner seeking to expand the record may be entitled to an evidentiary hearing on his claim if the petitioner "failed to develop the factual basis of a claim in state court proceedings" but shows that his present claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2) (emphasis added). "[I]n the context of Rule 7, a petitioner "must show that the evidence he now seeks to add to the federal habeas record was before the state court when it adjudicated his claim or that he made diligent efforts to put such evidence before the state court." *House v. Clarke*, No. 3:16-cv-238, 2017 WL 990580, at *8 (E.D. Va. Mar. 14, 2017) (quoting *Harden v. Branker*, 2010 WL 3609462, at *1 (W.D.N.C. Sept. 7, 2010)). "Alternatively, the petitioner 'must show that the evidence he is seeking to add could not have been discovered previously through due diligence and that the evidence clearly and convincingly establishes that but for constitutional error, no reasonable factfinder would have found him guilty.'" *Id.* (quoting *Harden*, 2010 WL 3609462, at *1); *see also Bradshaw v. Richey*, 546 U.S. 74, 79 (2005) (holding federal appellate court erred when it "reli[ed] on evidence that was not properly presented to the state habeas courts without first determining" if the habeas petitioner had met the § 2254(e)(2) criteria).

Here, as in *House*, the evidence that Mr. Drayton "seeks to add to the record does not exist yet," because he seeks discovery to obtain the evidence. *House*, 2017 WL 990580, at *9. Thus, the matters Mr. Drayton seeks were clearly not part of the state court record, and Mr. Drayton offers no explanation to establish he was diligent in presenting the alleged evidence before the state courts.

4

### B. Bond

The standard for release on bond pending habeas review is a high one. In order for a petitioner to be released on bond in a habeas case, the petitioner must show (1) "that his petition presents a substantial constitutional claim upon which he has a high probability of success," and (2) "that extraordinary circumstances warrant his release." *United States v. Perkins*, 53 F. App'x 667, 669 (4th Cir. 2002). Mr. Drayton satisfies neither condition to be considered for bond. The habeas petition does not make any showing that Mr. Drayton has a substantial claim or that he would have a high probability of success. He also does not present extraordinary circumstances.

### C. Appointment of Counsel

Habeas petitioners have no right to counsel in federal habeas. *See McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). The Court has discretion to appoint counsel if it "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). However, counsel should only be appointed under "exceptional circumstances." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Mr. Drayton has presented no such exceptional circumstances, and therefore, his motions are denied. Dkt. 22 at 3; Dkt. 37 at 1. In addition, appointment of counsel is not required in the absence of an order granting discovery or an evidentiary hearing. *See* R. 6(a), R. 8(c), Rules Governing Section 2254 Cases U.S. District Courts. The claims before the Court do not warrant discovery and concern historical matters of record that do not require a hearing.

### D. Amend the Petition/Due Process Violation

Mr. Drayton seeks to amend his petition to: (1) raise a due process claim based upon the exclusion of "a witness based [up]on a violation of [the] rule on witnesses"; (2) add his claim that his conviction is void because there was no affidavit of probable cause filed; and (3) consider the

5

affidavit of Ms. Nicole Geter ("Geter") in support of his allegation of ineffective assistance of trial counsel for not calling Geter. Dkt. 40 at 1; Dkt. 38 at 1; Dkt. 22 at 3.

Under Federal Rule of Civil Procedure 15(a), "leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). For purposes of habeas petitions, rules regarding amended petitions are governed by the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 2242 (providing that petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); *Mayle v. Felix*, 545 U.S. 644, 654–55 (2005). However, "[w]here the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied." *Pittman*, 209 F.3d at 317. "Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings 'ar[i]se out of the conduct, transaction, or occurrence.'" *Mayle*, 545 U.S. at 645 (alteration in original) (quoting Fed. R. Civ. P. 15(c)). "An amendment to a habeas petition relates back under Rule 15(c)(2) when the new claim arises from the 'same core facts [in time and type] *as the timely filed claims*.'" *Gray v. Branker*, 529 F.3d 220, 241 (4th Cir. 2008) (alteration in original) (emphasis added) (quoting *Mayle*, 545 U.S. at 657).

At this point, amendment would be futile because the alleged due process claim was not timely filed, and there is no viable, non-defaulted claim, to which the due process claim would relate back. *See, e.g., Ward v. Clarke*, No. 3:14-cv-11, 2014 WL 5795691, *3 (E.D. Va. Nov. 6, 2014) (denying leave to amend as "futile" because "the statute of limitations bars the new claim").

Mr. Drayton's next alleged claim, the lack of a probable cause affidavit to support the arrest warrants, does not raise a federal claim. "[T]here is no jurisdiction on federal habeas to review a claim that implicates no federal rights. Importantly, 'a state prisoner is entitled to relief under 28

6

U.S.C. § 2254 only if he is held "in custody in violation of the Constitution or laws or treaties of the United States."" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 483 (E.D. Va. 2005) (quoting *Billotti v. Legursky*, 975 F.2d 113, 119 (4th Cir. 1992)). Thus, "[q]uestions of state law that do not implicate federal rights are not cognizable on federal habeas under § 2254." *Billotti,* 975 F.2d at 119. This allegation does not state a violation of a federal right and therefore, amendment would be futile.

With regard to Geter's affidavit, Mr. Drayton never submitted an affidavit during the state circuit court habeas proceedings.[4] Nor did Mr. Drayton submit Geter's unsworn letter, although he attached it to various motions he filed in the circuit court criminal case. Consequently, the facts that Mr. Drayton seeks to present are defaulted, he has not alleged cause in support of his motion to amend this claim, and therefore amendment would be futile. *See infra* at 17–23. Mr. Drayton's motion to amend will be denied.

## II. Procedural History

Mr. Drayton's two-day jury trial in the Circuit Court of the City of Alexandria ended on November 13, 2019 with the jury convicting him of assault by mob, in violation of Virginia Code §§ 18.2–41, 18.2–38; robbery by mob, in violation of Virginia Code §§ 18.2-58, 18.2-42.1, 18.2-

---

[4] In his response in the Virginia Supreme Court habeas, Mr. Drayton admitted he did not submit Geter's affidavit in that proceeding, and directed that court to look for it in the circuit court habeas proceedings. VSCT Hab. at 287–88. A review of the circuit court habeas record, however, establishes that there was no affidavit. Indeed, the acknowledged, but not sworn, Geter letter was stamped received by the circuit court clerk on March 19, 2021, and filed in his criminal case. *Commonwealth v. Drayton*, Case Nos. CR19F00185-01 through -03, R. at 826 (hereinafter "R. at ___"). The March 19, 2021 Geter letter was sent to the circuit court several months before Mr. Drayton filed his first state habeas petition on December 12, 2021. To be sure, Mr. Drayton admits in a pleading filed after the Virginia Supreme Court dismissed his second state habeas petition that he did not have an affidavit from Geter when he filed his second habeas petition and refers to the letter as an "affidavit (letter) to Commonwealth Attorney." Dkt. 27-3 at 71. Mr. Drayton sought to have someone call Geter "via phone," and he provided a number. *Id.*

7

38; simple assault, in violation of Virginia Code § 18.2-57(A); and petit larceny, in violation of Virginia Code § 18.2-96(2). Dkt. 26-1. On January 16, 2020, the circuit court sentenced Mr. Drayton to ten years in prison for assault by mob; five years in prison for robbery by mob; twelve months in jail, suspended, for simple assault; and a $250.00 fine for petit larceny. *Id.*; Dkt 26-9 at 30. Judgement was entered on January 31, 2020. Dkt. 26-1, *Commonwealth v. Drayton*, Case No. CF19000185 (Alex. Cir. Ct. Jan. 31, 2020).

Mr. Drayton, by counsel, filed a petition for appeal in the Virginia Court of Appeals alleging that the evidence was insufficient to prove that he "acted as part of a mob," and sought reversal of his convictions for assault by mob and robbery by mob. Dkt. 26-2 at 5. The court denied the petition on December 21, 2020, and summarized the evidence as follows:

> On April 23, 2019, Jenell Lorton celebrated her birthday at her apartment with her son and her fiancé, Walter Blanton. Appellant [Drayton], Lorton's nephew, arrived uninvited. Lorton asked Appellant to leave, but he "begged" to stay, so Lorton said that she would "think about it." Appellant left and returned "a few minutes" later with his brother, Lamont Drayton. Lorton told appellant and Lamont to leave because Lamont Drayton had "tried to hurt [Lorton] before twice." They complied, but about two hours later, Lorton saw appellant and [Lamont] Drayton standing on her patio at her back door. Appellant quickly opened the door, and the men entered the apartment. Both men were "drunk," and [Lamont] Drayton "threw" a mostly empty "fifth . . . of alcohol" on the table. Appellant approached Blanton and punched him. Blanton retreated into a bedroom and tried to close the door, but appellant "bust[ed] through the door." Appellant obtained a hammer that was in the bedroom and struck Blanton's head with it. Lorton "jumped on [appellant's] back" to stop the fight. [Lamont] Drayton, however, grabbed Lorton from appellant's back, "threw" her onto the floor "real hard," and said, "I'm going to get some of that, too." [Lamont] Drayton then tackled Blanton onto the bed, where he and appellant repeatedly struck Blanton's head, stomach, and legs.
>
> After several minutes, Blanton stood and tried to escape, but appellant again struck him in the head with the hammer. The blow dazed Blanton, and appellant pushed him into the bathroom, where he fell into the bathtub. Appellant and [Lamont] Drayton continued "beating" Blanton "with their fists" as he "curled up." Appellant again swung the hammer at Blanton's head but missed and hit the soap dish, breaking it. During the attack, Lorton fled her apartment, rushed to a neighbor's patio, and called 911.
>
> Appellant and [Lamont] Drayton stopped attacking Blanton and pursued Lorton. Upon reaching her, they "stomp[ed] [her] head, "kick[ed]" her back, and

8

"punched]" her.  As Lorton laid on the ground, they called her a "bitch" and said that they "hope[d]" that she would "die."  Appellant seized Lorton's phone, and the men fled.

Alexandria Police Officer Bennie Evans had been visiting a friend nearby when he heard the police dispatch for a call at Lorton's apartment.  Evans ran to the apartment and assisted Lorton and Blanton.  Lorton was distraught and crying, and her shirt was "stretched out."  Her left eye was swollen, and she was "sweating profusely."  Evans saw several wounds on Blanton's head that he described as "stab wounds."  Evans testified that "[Blanton] had just blood coming from everywhere around his head."

Officer Douglas Serven arrived at the scene and saw appellant and [Lamont] Drayton walking behind the apartment building.  Serven pursued the men and ordered them to "stop, turn around, and show [him] their hands."  Serven ordered appellant and [Lamont] Drayton to get on the ground.  As they complied, Serven noticed that there was blood on [Lamont] Drayton, but he did not appear to have any wounds.  An "odor of an alcoholic beverage" was coming from [Lamont] Drayton, and his "right hand . . . was swollen as if he had been . . . punching someone."  Appellant was "very angry" and "defensive."  Serven did not observe any injuries to appellant.  Police found three cell phones on appellant's person, including Lorton's.

Appellant, a convicted felon, testified that he had been staying with Lorton for a few days before the incident and that nobody had asked him to leave.  [Lamont] Drayton arrived around 2:00 p.m. on April 23rd, and, according to appellant, Lorton was "happy to see him."  Appellant and [Lamont] Drayton left to obtain a cell phone and returned to Lorton's apartment.  Appellant claimed that when they returned, Lorton and Blanton were arguing because Blanton wanted appellant to leave.  Appellant testified that Blanton struck him on the head with a hammer.  Appellant claimed that he "grabbed the hammer" from Blanton and repeatedly struck him with it in self-defense; [Lamont] Drayton joined the fight to defend appellant.  Appellant, [Lamont] Drayton, and Blanton "ended up" in the bathroom, but appellant stopped the fight because he did not want to hurt anyone and was not "in danger anymore."  Appellant stated that he took Lorton's phone because he wanted to call the police before Lorton could give a "false narrative."  Appellant admitted that he had struck Lorton because he was hurt by her actions.  Appellant claimed that he had a cut on his forehead where Blanton struck him with the hammer; he admitted, however, that his "mug shot," taken on the day of the incident, did not depict any such cut.  Appellant suggested that his mug shot might have been altered.

*Id.* at 33–35, *Drayton v. Commonwealth*, Record No. 0208-20-4 (Va. Ct App. Dec. 21, 2020).  The

court then discussed the applicable law and explained that

[a] "mob" is "[a]ny collection of people, assembled for the purpose and with the intention of committing an assault or a battery upon any person or an act of violence as defined in § 19.2-297.1, without authority of law."  Code § 18.2-38.  But the

group need not form with the unlawful purpose in mind. *Johnson v. Commonwealth*, 58 Va. App. 303, 320 (2011) (quoting *Harrell v. Commonwealth*, 11 Va. App. 1, 7 (1990)). "It is possible that individuals who are lawfully assembled may become members of a 'mob' without great deliberation and for them to become part of a group which is moved or controlled by those impulsive and irrational forces which perpetuate mob violence." *Hughes v. Commonwealth*, 43 Va. App. 391, 400–01 (2004) (quoting *Harrell*, 11 Va. App. at 7–8). "For a group of persons lawfully gathered for whatever purpose to 'assemble' as a mob . . . , they need only to collectively band together with the common purpose and intention of committing an assault and battery upon a person." *Id.* at 401 (quoting *Harrell*, 11 Va. App. at 7–8). In addition, "no express or stated call to join forces is necessary" for an assembly to constitute a mob. *Johnson*, 58 Va. App. at 321 (citing *Harrell*, 11 Va. App. at 7–8). Rather, whether a group of individuals constitutes a mob is "'to be evaluated on a case-by-case basis'" and is "a question of fact for the factfinder." *Johnson*, 58 Va. App. at 635 (quoting *Johnson*, 58 Va. App. at 320).

Under those principles, . . . . the record in this case demonstrates that appellant and [Lamont] Drayton joined together and acted in concert to assault Blanton. After appellant punched Blanton, the ensuing scuffle moved into the bedroom. [Lamont] Drayton joined the affray, announcing that he was "going to get some of that, too," and tackling Blanton onto the bed. *See Johnson*, 58 Va. App. at 635 (holding that "a mob formed . . . with the specific intent to commit violence" when one of the mob's members asked, "Where them bitches at," evincing "the mob's intent to find and assault" the victims). [Lamont] Drayton and appellant then joined together to attack Blanton; both men repeatedly struck Blanton's head, stomach, and legs as he lay on the bed. When Blanton stood and tried to escape, appellant struck his head with a hammer and forced him into a bathtub, where he "curled up." [Lamont] Drayton and appellant resumed their attack on Blanton, "beating" him "with their fists." *See Hughes*, 43 Va. App. at 402 (affirming three brothers' malicious wounding by mob convictions when "[t]heir actions in attacking various individuals clearly indicate[d] that they were acting collectively with the intent to assault"). Under those circumstances, we hold that the evidence supported the jury's finding that appellant and [Lamont] Drayton banned together as a "mob" under Code § 18.2-38 for the purpose of assaulting Blanton.

**** 

"Any and every person composing a mob which commits an act of violence as defined in § 19.2-297.1 "shall be guilty of that act of violence." Code § 18.2-42.1. Robbery is such an act of violence. Code § 19.2-297. l(A)(i)(e). As with the malicious wounding by mob statute, Code § 18-42.1's use of the word "which" indicates that the "the mob is the criminal actor." *Paiz*[*v. Commonwealth*], 54 Va. App. [688,] 697 [(2009)]. Accordingly, "when one member of a mob commits [a robbery], . . . all members of the mob can be held collectively responsible solely because of their mob membership." *Id.* Thus, contrary to appellant's argument, the Commonwealth was not required to prove that both appellant and [Lamont] Drayton had a "common purpose in taking [Lorton's] cell phone" to sustain the

robbery by mob conviction. Instead, the Commonwealth was charged with proving that they "assembled for the purpose and with the intention of committing an assault or a battery" and that one member of the mob committed a robbery. *Id.* "There [was] no requirement that the 'mob' agree on the manner or nature of such assault or battery." *Sheikh v. Commonwealth,* 32 Va. App. 9, 13 (2000).

Here, the record demonstrates that appellant and [Lamont] Drayton ceased their attack on Blanton and pursued Lorton as she left her apartment to call the police. Both men, acting in concert, "stomp[ed] [her] head," "kicked[]" her back, and "punch[ed]" her. Then, as Lorton laid on the ground, appellant seized her phone, and both men called her a "bitch" and stated their "hope[]" that she would "die." Those circumstances plainly established that appellant and [Lamont] Drayton intended to assault Lorton and that they acted in concert to effectuate that intent. Thus, the jury's determination that appellant and [Lamont] Drayton constituted a mob when appellant stole Lorton's phone was not plainly wrong or without evidence to support it.

Dkt. 26-2 at 36–38. Mr. Drayton did not appeal to the Supreme Court of Virginia.

On December 12, 2021, Mr. Drayton, proceeding *pro se*, filed a petition for writ of habeas corpus in the circuit court, (designated by "Hab. at __"), and an amended petition on January 11, 2022. Dkt. 26-3 at 1–7; Dkt. 26-5 at 26. He alleged the following claims:

1) Denial of due process, petitioner did not receive review by a three-judge panel in the Court of Appeals of Virgina. Hab. at 76–77.

2) "Ineffective assistance of counsel failing to perfect an appeal" from the denial of his petition for appeal by one judge. *Id.* at 77.

3) "[C]ounsel was not prepared for trial, did not conduct adequate investigation, and" did not keep petitioner "reasonably informed." *Id.* at 77–78.

4) Prosecutor's closing argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 78–81.

5) Prosecutor violated *Brady v. Maryland,* 373 U.S. 83 (1963), because he failed to disclose exculpatory evidence and Petitioner was therefore unable to call a witness who had been sitting in the courtroom after a rule on witnesses had been entered; this was a "clandestine furtive tactic" by the prosecutor. *Id.* at 81–82.

6) Prosecutorial misconduct because the prosecutor made "clandestine comments" at bench conference. *Id.* at 82.

7) "Farce Sham Trial." *Id.* at 82–85.

8) Trial court instruction errors. *Id.* at 85–86.

9) "Incorrect clerical error" involving motion for delayed appeal. *Id.* 86–88.

10) Miscarriage of justice: Actual innocence. Court made improper "clandestine" comments. *Id.* at 88–90.

11) Suppression of appellant's evidence. Counsel failed to "object [to bench conferences, recesses, comments and instructions.]" Specifically, "you have heard all of the facts" and "you must not engage in guesswork or speculation. The evidence you are about to consider consists of testimony of witnesses and exhibits that are admitted into evidence." Counsel also did not "apply ready and willing witnesses, and demand a mistrial." *Id.* at 90.

12) Counsel was ineffective for failing to request alternative instructions, "heat of passion or unlawful wounding." *Id.* at 90–91.

13) Denial of right to retain new counsel. Petitioner requests court to intercept wire communications, other alleged trial errors. *Id.* at 91–94.

On May 24, 2022, the circuit court dismissed Claims (1), (2), (4), (5), (6), (7), (8), (9) (10),[5]

the portion of Claim (11) alleging suppression of evidence, and Claim (13) because a prisoner "is

not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into

an alleged non-jurisdictional defect of a judgment of conviction." Dkt. 39-1 at 3 (citing *Slayton v.*

*Parrigan*, 205 S.E.2d 680, 682 (Va. 1974)). The circuit court granted Claim (2), alleging

ineffective assistance of counsel for failing to perfect his appeal to the Supreme Court of Virginia,

and directed Respondent to seek a belated appeal on Petitioner's behalf; and dismissed the

remainder of Petitioner's ineffective assistance of counsel claims (Claims (3), (11), and (12)). *Id.*

at 7. After Mr. Drayton was granted a belated appeal to the Supreme Court of Virginia, the circuit

court dismissed and struck the habeas proceeding from its docket on August 26, 2022. Hab. at

247–48.

The Supreme Court of Virginia granted Mr. Drayton a delayed direct appeal, new counsel

was appointed, and new counsel filed a petition for appeal in the Supreme Court of Virginia on

March 21, 2023, which alleged the same sufficiency issue that Mr. Drayton had raised in the

---

[5] The circuit court dismissed a portion of Claim (10), in which Mr. Drayton alleged he was factually innocent, because such a claim is not cognizable in state habeas. Dkt. 39-1 at 4. The remainder was dismissed pursuant to *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974).

Virginia Court of Appeals—that he had not acted as part of a mob. Dkt. 26-8 at 16.[6]  On August

11, 2024, the Supreme Court of Virginia refused Mr. Drayton's petition, and on November 20,

2023, denied his petition for rehearing. *Id.* at 49, *Drayton v. Commonwealth*, Record No. 230201

(Va. Aug. 11, 2023); *id.* at 61.

On December 27, 2021, while his first state habeas petition was pending, Mr. Drayton,

proceeding *pro se*, filed a second state habeas petition in the Supreme Court of Virginia. Dkt. 27-

3 at 64. On August 8, 2022—after the circuit court's May 24, 2022 denial of Mr. Drayton's first

state habeas petition—the Supreme Court of Virginia dismissed the second state habeas petition.[7]

Dkt. 27-3 at 64–65, *Drayton v. Virginia Department of Corrections*, Record No. 211231 (Va. Aug.

8, 2023).

### II. Federal Habeas Claims

On June 10, 2024, Mr. Drayton filed a timely petition for writ of habeas corpus, pursuant

to 28 U.S.C. 2254, in this Court and alleges the following claims:[8]

> (1)   The evidence was insufficient to convict petitioner of wounding by Mob or
> Robbery by Mob.  Dkt. 6 at 6.

---

[6] Because new counsel failed to timely file the notice of appeal, he filed a motion under Virginia Code § 19.2-321.2 for a delayed appeal, which the Virginia Supreme Court granted on February 13, 2023. Dkt. 26-8 at 2–5, 7.

[7]  The court denied Claim (2) in the second state habeas petition as moot because the circuit court had already granted Mr. Drayton a belated appeal. Dkt. 27-3 at 64.  The court denied several pending motions and then dismissed Mr. Drayton's petition. Dkt. 27-3 at 65 (citing Virginia Code § 8.01-663).

[8] A district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and it is "the district court's duty to consider only the specific claims raised in a § 2254 petition." *See Folkes v. Nelsen*, 34 F.4th 258, 269 (4th Cir. 2022). Here, the amended federal petition was accompanied by a document entitled "Layman's Terms Habeas Corpus Petition" ("Layman's Petition"). Dkt. 6-1.  The Layman's Petition contains the same claims as the amended petition but is more coherent.  The Layman's Petition starts with Claim 3 and appears to be a continuation of the claims set forth in the amended petition, which contains Claims 1, 2, and 3.  The Court references both pleadings herein.

(2)     The trial court erred in finding that petitioner's mother could not testify due to being influenced by the testimony she observed in court. *Id.* at 7.

(3)     Farce Sham Trial. *Id.* at 9. Counsel failed to conduct adequate investigation and communicate with his client. Dkt. 6-1 at 4–6.

(4)     Miscarriage of Justice (closing arguments). *Id.* at 6–10. Counsel was ineffective because he did not follow petitioner's wishes. *Id.* at 10.

(5)     *Brady* violation. *Id.* at 11–15. Counsel should have requested a mistrial. *Id.* at 12.

(6)     Prosecutorial Misconduct. Ineffective assistance of counsel for failure to object to the court's comments. *Id.* at 15–16.

(7)     Farce sham trial. *Id.* at 16–18. Counsel was ineffective for allowing a sham trial. *Id.* at 17;

(8)     Trial court instruction errors, constitutional law violations when prosecutor said you could infer malice, evidence inferences. *Id.* at 18–20.[9]

(10)    Miscarriage of justice; procedural default, ineffective assistance of counsel. *Id.* at 20–21.

(11)    Suppression of appellant's evidence (hospital records); evidence was not considered. *Id.* at 23–24.

### III. Exhaustion and Procedural Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000). Exhaustion requires a petitioner present his federal claims to the appropriate state court in the manner required by the state court, to give the state court "a meaningful opportunity to consider allegations of legal error." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986).

For a claim to be exhausted, a Virginia petitioner must have presented the *same* factual and legal claims raised in his § 2254 petition to the Supreme Court of Virginia in "a procedural context in which its merits will not be considered." *Castille v. Peoples*, 489 U.S. 346, 351 (1989);

---

[9] There is no Claim (9) in either the amended federal petition or in the Layman's Petition. The Court will refer to the numbering of claims in the petitions for consistency.

14

*Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (exhaustion requires a petitioner to present "both the operative facts and the controlling legal principles," to the state court); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (exhausting the facts upon which a petitioner relies is an important aspect of exhaustion under AEDPA, which limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits."); *see Muhammad v. Clarke*, No. 1:11-cv-345, 2012 WL 259869, at *5 (E.D. Va. Jan. 26, 2012) (noting that where a petitioner attempts to allege unexhausted facts, the federal court "must defer" to the state court's ruling) (citing *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002)). The petitioner bears the burden of proving exhaustion. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker*, 220 F.3d at 288 (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)). Such claims are deemed to be simultaneously exhausted and defaulted. *Id.*

Further, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619; *see also Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). A state procedural rule is "adequate" if it is "firmly established" and regularly or consistently applied by the state court and "independent" if it does not depend on a federal constitutional ruling. *Yeatts v. Angelone*, 166 F.3d 255, 261, 263–64 (4th Cir. 1999).

With the exception of Claim 1, the sufficiency of the evidence claim, Mr. Drayton has defaulted each of the claims set forth in his § 2254 petition. The claims raised in his first state

habeas petition are defaulted because he failed to appeal the circuit court's May 24, 2022 order dismissing his first state habeas. Mr. Drayton's failure to appeal that dismissal constitutes a default that precludes federal review. *See Whitley v. Bair*, 802 F.2d 1487, 1500 (4th Cir. 1986) ("[F]ailure to appeal claims disposed of by state habeas trial court constitutes a procedural bar to further federal review of such claims."); *see also Wise v. Williams*, 982 F.2d 142, 146 (4th Cir. 1992) (affirming district court's conclusion that state habeas claim was procedurally defaulted due to prisoner's failure to timely file his notice of appeal).

Likewise, the claims raised in the second state habeas petition were each resolved against Mr. Drayton by the circuit in the first state habeas proceeding.[10] The Supreme Court of Virginia dismissed Mr. Drayton's claims in the second state habeas petition because they had been "previously decided against [him] in the circuit court." Dkt. 27-3 at 65 (citing Va. Code Ann. § 8.01-663). "The Supreme Court of Virginia has construed § 8.01-663 to mean that habeas judgments are conclusive and that issues resolved in a previous proceeding (such as an earlier habeas or on direct review) cannot be relitigated in a subsequent habeas petition absent a change in circumstances." *Star v. Winstead*, No. 1:23-cv-1641, 2024 WL 4008649, at *6 (E.D. Va. Aug. 30, 2024). Thus, Mr. Drayton's claims in his second state habeas were not fairly presented for the purposes of exhaustion because they were not presented in a context in which the court could reach the merits of his claims.

With the exception of the direct appeal claims alleging insufficient evidence, all of Mr. Drayton's federal claims are exhausted and defaulted because they were not "fair[ly] present[ed]"

---

[10] Claim (2) in the second state habeas petition, alleging Mr. Drayton was entitled to a belated appeal, was dismissed as moot because the circuit court had awarded him a belated appeal and therefore he had "already been awarded all the relief to which he [was] entitled." Dkt. 27-3 at 64.

through the Supreme Court of Virginia in "a procedural context in which its merits" could be "considered." *Castille*, 489 U.S. at 351.

### A. Cause and Prejudice

Federal courts may not review defaulted claims absent a showing of cause and prejudice, or a fundamental miscarriage of justice such as actual innocence. *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) ("To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim.") (quoting *Coleman*, 501 U.S. at 750)). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel; (2) a factor external to the defense which impeded compliance with the state procedural rule; or (3) the novelty of the claim. *Clozza v. Murray*, 913 F.2d 1092, 1104 (4th Cir. 1990); *Coleman*, 501 U.S. at 753–54. To show "prejudice," a petitioner must show an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Importantly, a court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995). Mr. Drayton asserts several grounds as "cause" to excuse his defaults.

"*Fraud on the Court*." In his brief in opposition, Mr. Drayton asserts that his claim that his trial was a "'Fraud/Farce Trial,'" that "nullifies" the procedural defaults "alleged via respondent." Dkt. 36 at 1. Mr. Drayton also argues that because the Court allowed his § 2254 petition to proceed, then there must be "genuine issues of fraud" that need to be resolved. *Id.* at 2. His arguments are frivolous and fail to constitute "cause" to excuse his defaults.

Mr. Drayton's "fraud" claim alleges that the judgments he is challenging are "void *ab initio*" and were procured in a "fraud/sham trial." *Id.* at 5. The alleged fraud is premised upon

alleged improper conduct during trial, subsequent to trial, and by the absence of the "affidavit of probable cause." *Id.* at 16–17. Mr. Drayton's allegation that his convictions are void *ab initio* is not supported by Virginia law, which makes a distinction between void and voidable. "[T]he judgment of a court, procured by extrinsic fraud, . . . is void and subject to attack, direct or collateral, at any time." *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 320 (Va. 2005). "[T]he judgment of a court, procured by intrinsic fraud, *i.e.*, by perjury, forged documents, or *other incidents of trial related to issues material to the judgment*, is voidable by direct attack at any time before the judgment becomes final." *Id.* (emphasis added). Mr. Drayton's "fraud on the court" claim is predicated on conduct at trial. Therefore Mr. Drayton's claim is merely voidable, at best, and as a result, is defaulted.

Virginia has "recognized five circumstances that may give rise to judgments which are void *ab initio*," one of which is the judgment "was procured by fraud." *Hannah v. Commonwealth*, 899 S.E.2d 621, 626 (Va. 2024); *see Nelson v. Warden of Keen Mountain Corr. Ctr.*, 552 S.E.2d 73, 75 (Va. 2001) ("[A]ny judgment rendered without [subject matter jurisdiction] it is void *ab initio*."). Mr. Drayton, relying on his allegation of fraud, asserts his judgments are void *ab initio*, which allows him to challenge them despite his defaults. *See Singh v. Mooney*, 541 S.E.2d 549, 551 (Va. 2001) (noting an order that is void *ab initio* for lack of jurisdiction may be challenged "anywhere, at any time, or in any manner"). Here, the circuit court found that Mr. Drayton's claims were either defaulted or without merit. *See supra* at 12–13. Thereafter, he filed the same claims in a second state habeas in the Supreme Court of Virginia, which found them barred from review due to the dismissal by the circuit court. Dkt. 27-3 at 64–65.

In Virginia, courts are presumed to know and follow the law. *See Yarborough v. Commonwealth*, 234 S.E.2d 286, 291 (Va. 1977) ("Absent clear evidence to the contrary in the

18

record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts."). As the Supreme Court of Virginia recently reaffirmed, "nothing is better settled than that everything is to be presumed in favor of the correctness of the rulings of a court of competent jurisdiction, when brought under review in an appellate tribunal, until the contrary is shown." *Lisann v. Lisann*, 915 S.E.2d 59, 69 (Va. 2025). If the criminal judgment before the court in the second habeas proceeding had been void *ab initio* under state law, the Supreme Court of Virginia would have followed the law, which allows a judgment void *ab initio* to be challenged "anywhere, at any time, or in any manner," and vacated Mr. Drayton's convictions. *Singh*, 541 S.E.2d at 551. In any event, Mr. Drayton's claim of fraud is a matter of state law and is therefore not cognizable on federal habeas review. *Billotti*, 975 F.2d at 119; *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

    *Show Cause Order*. In his brief in opposition to the motion to dismiss, Mr. Drayton argues that the Court's issuance of a show cause order directing Respondent to "file an Answer in strict compliance with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts," Dkt. 19 at 1, imbues a state prisoner's § 2254 petition with a presumption that the claims in the federal petition have colorable merit. Dkt. 36 at 1–2. To the contrary, the show cause order was in accordance with Habeas Rule 4, which directs the Court to "examine" a habeas petition:

> [i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

R. 4, Rules Governing Section 2254 Cases U.S. District Courts. Here, the records of the state proceedings were necessary to review the claims in Mr. Drayton's federal petition. Consequently, the Court ordered a response and the relevant state court records. Dkt. 19. Having ordered a

response, Respondent was required to "state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations." R. 5, Rules Governing Section 2254 Cases U.S. District Courts. In this case, Respondent's Rule 5 Answer and accompanying documents and records establish that, with the exception of his sufficiency of the evidence claim, Mr. Drayton defaulted his claims in state court, which bars federal review. Dk. 25. Mr. Drayton's arguments are meritless and do not establish cause to excuse his defaults.

*Actual Innocence.* Mr. Drayton makes conclusory references to "actual innocence," but presents no cogent argument. Dkt. 36 at 8, 15. To establish actual innocence, "[new] evidence must establish sufficient doubt about [a petitioner's] guilt to justify the conclusion that his [incarceration] would be a miscarriage of justice *unless* his conviction was the product of a fair trial." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). A gateway claim requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.[11] Further, "[t]he miscarriage of justice exception is concerned with actual as compared to legal innocence," and "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial. Given the rarity of such evidence, 'in virtually every case, the allegation of

---

[11] To the extent Mr. Drayton is asserting a free-standing claim of actual innocence, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *see McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). In addition, as noted below, Mr. Drayton does not meet the gateway standard, and therefore he has also failed to meet any potential freestanding claim of actual innocence. *House v. Bell*, 547 U.S. 518, 555 (2006) (noting that a freestanding actual innocence claim would require "more convincing proof of innocence" than that needed to meet the gateway standard).

actual innocence has been summarily rejected.'" *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citations omitted).

Mr. Drayton's response to the motion to dismiss references to pages 247 and 248 of "petitioner's transcripts," via his annotation in the margin, and appears to be the basis of his "actual innocence claim." Dkt. 36 at 15. The referenced pages are a portion of testimony from defense witness, Alexandria Police Officer Gabriel Terrell, who took a statement from Jenelle Lorton the day of the offenses in which she mentioned the hammer. After reviewing his notes, Terrell testified that Lorton had told him that Blanton had gone into the bedroom "to get the hammer to defend himself." Dkt. 28-2 at 89. Lorton testified during the prosecution's case-in-chief that Blanton "didn't have no hammer in his hand." *Id.* at 13. On cross-examination, the prosecutor questioned Terrell as to whether Lorton provided any further explanation and Terrell explained that Lorton's statement continued with her adding that Blanton had gone into the bedroom "to defend himself after he was attacked initially in the living room." *Id.* at 89–90. The alleged impeachment testimony, in context, had little impeachment value. Indeed, although Mr. Drayton testified he was struck on his forehead by Blanton, Mr. Drayton's mugshot, taken the day of the offenses, did not show any injury to Mr. Drayton's forehead—which Mr. Drayton himself admitted during his cross-examination by the prosecutor.[12] Dkt. 28-1 at 106; Dkt. 28-2 at 139; *Commonwealth v. Drayton*, Case Nos. CR19F00185-01 through -03, R. at 7 (hereinafter "R. at __"), Commonwealth Ex. No. 6, R. at 78.

---

[12] Mr. Drayton relied upon a picture of himself taken at the scene that showed something on his forehead, Commonwealth Ex. No. 8b, R. at 81, which turned out to be a "chunk of Mr. Blanton's flesh." Dkt. 28-2 at 138. Mr. Drayton was further impeached with photographs taken of his back that did not show any knife wounds. *Id.* at 139–40. Mr. Drayton testified that during the scuffle in the bathroom he turned and saw Lorton "jabbing [him] in the back with a knife." *Id.* at 110. Mr. Drayton admitted there were no holes in his shirt and explained that Lorton's jabs were not "forceful enough to cause a perforation." Commonwealth Ex. No. 8f, R. at 85; Dkt. 28-2 at 140.

*Lack of Jurisdiction.* Next, Mr. Drayton appears to argue that the circuit court lacked jurisdiction to try him on the indictments because the record does not contain a probable cause affidavit to support his arrest. Dkt. 36 at 15–16. Mr. Drayton, however, was tried on indictments, which are valid if they are returned by the grand jury and the name of the witness who provided testimony to the grand jury is included at the foot of the indictment. *See* Va. Code Ann. § 19.2-202. Mr. Drayton's indictments were returned as "True Bills," signed by the foreperson, and the name of the witness, "Lauren O'Malley, APD," is affixed at the foot of the indictment as the witness. R. at 13–14. The indictments complied with Virginia Code § 19.2-202.

Additionally, Mr. Drayton's alleged defect does not state a claim of constitutional magnitude. "A state prisoner is entitled to relief under § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Billotti*, 975 F.2d at 119 (quoting *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). The Fifth Amendment's requirement of indictment by a grand jury does not apply to the states. *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972) (noting that the "grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment"). Accordingly, any possible irregularity or defect would involve an error of state law.[13]

Finally, the argument's lack of merit aside, any irregularity or defect with Mr. Drayton's indictments was cured by his convictions. *United States v. Mechanik*, 475 U.S. 66, 73 (1986) (noting the "jury's verdict rendered harmless any conceivable error in the charging decision that

---

[13] The Fourth Circuit has previously rejected a habeas petitioner's assertion that a state court lacked jurisdiction to convict him finding the issue of jurisdiction was one of state law. *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) . The determination of a state court's jurisdiction involves a matter of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

22

might have flowed from the violation"); *United States v. Masiarczyk*, 1 F. App'x 199, 213 (4th Cir. 2001) (concluding that, "even if [the agent's] grand jury testimony was inaccurate or false, that falsity provides no basis for reversing [the defendants'] convictions" and holding that "because the petit jury subsequently convicted [the defendants] beyond a reasonable doubt, any error in their grand jury proceedings is harmless").

     *Geter "Affidavit."* Lastly, Geter's "affidavit" submitted with the original federal petition was not sworn, and as noted above, Mr. Drayton never submitted the unsworn Geter letter in support of either his first or second state habeas petitions. *See supra* note 4. Because Ms. Geter's statement is not sworn, it is not properly characterized as an affidavit. Mr. Drayton also failed to submit the "Geter affidavit" with his federal petition and did not submit it until January 17, 2025 as an attachment to his response in opposition to the motion to dismiss. Dkt. 36-1.

     B. *Martinez v. Ryan, 566 U.S. 1 (2012)*

     In *Martinez*, the United States Supreme Court recognized a narrow exception for defaulted claims of ineffective assistance of trial counsel. 566 U.S. at 17. *Martinez* held that "a federal court may review a 'substantial' ineffective assistance of counsel claim, notwithstanding procedural default, when state law required that the claim be raised in the state 'initial-review collateral proceeding' and, in that initial proceeding, 'there was no counsel or counsel in that proceeding was ineffective.'" *Vandross v. Stirling*, 986 F.3d 442, 450 (4th Cir. 2021) (quoting *Martinez*, 566 U.S. at 17).

     None of Mr. Drayton's ineffective assistance of counsel claims satisfy *Martinez*'s requirement that the claim be "substantial." *Martinez*, 566 U.S. at 14. The question of whether a claim is "substantial" is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Mr. Drayton bears the burden of showing that his counsel's performance was deficient and, as result, that he

was prejudiced. *See Sigmon v. Stirling*, 956 F.3d 183, 199 (4th Cir. 2020) (noting that to establish a "substantial" claim a petitioner "must demonstrate that [his] underlying ineffective assistance of counsel claim is substantial with reference to *Strickland*'s two familiar prongs"). For a petitioner to establish a substantial claim he "must show that *no competent counsel*, in the exercise of reasonable judgment, would have omitted" the claim. *Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014). As set forth herein, Mr. Drayton fails to demonstrate that any of his defaulted ineffective assistance of trial counsel claims were "substantial," and thus they do not satisfy *Martinez*'s narrow exception.

The first prong of the *Strickland* test, the performance prong, holds that in evaluating whether a trial counsel's performance was deficient requires that counsel's performance must be evaluated for "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. In assessing counsel's performance, a court must avoid second-guessing with the benefit of hindsight and must presume that counsel's performance was reasonable and adequate. *Id.* at 689. Counsel's performance is deficient where it fails to meet "an objective standard of reasonableness," judged according to "prevailing professional norms." *Id.* at 688.

The second prong of the *Strickland* test requires that Mr. Drayton establish that counsel's substandard performance caused him prejudice.

> In the effective assistance context, prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability, in turn, is one "sufficient to undermine confidence in the outcome." *Id.*

*Owens v. Stirling*, 967 F.3d 396, 412 (4th Cir. 2020). In applying *Martinez*, if the court determines counsel did not "perform deficiently," the court need not "address whether [petitioner]'s underlying claim is substantial with respect to the prejudice prong of *Strickland*." *Id.* at 428, n.6.

*Inadequate Investigation and Communication (Claim 3)*.  In Claim 3, Mr. Drayton alleges his attorney failed to conduct an adequate investigation and communicate with his client.  Dkt. 6-1 at 4–5.  The claim is not substantial.  The specific allegations rely on counsel's failure to call "two witnesses . . . to testify," with "Nicole Geter being and EYEWITNESS," as well as "Katrina Drayton."  *Id.*  Mr. Drayton references Geter's "affidavit," which was not attached to the petition or the amended petition.[14]

In any event, Geter's "affidavit" was not presented in state court.  And even if Geter's purported affidavit had been submitted in state court, it does not provide a proper proffer of what Geter would have testified to if called.  Geter's purported affidavit states, "I been an eyewitness that did express want to have testified on behalf of the defendant, Mr. Michael Drayton . . . but had not been called to testify or to give a statement after already being told that I would testify by Mr. Drayton's lawyer," that Mr. Drayton's mother, Katrina Drayton, did not testify, and to "other disturbing factors that are depicted in transcripts pages 54, 55, 84, 89, 103 thru 107, 359, *etc.*"  Dkt. 36-1 at 2.[15]

Even if the Geter "affidavit" was a proper affidavit, there is no evidence to sustain a claim under *Strickland*.  As the Fourth Circuit recently noted, "[w]hen a petitioner's ineffective

---

[14] There is another version of Geter's affidavit ("Geter III"), that is in letter form and is addressed to the circuit court clerk. R. at 826; *see also* R. at 829 (copy of Geter III sent to the prosecutor). Geter III has the criminal docket number on it and is stamped received on March 19, 2021, which is approximately nine months before he filed his first state habeas petition. Geter III bears a notary's seal, but it is not sworn. Geter III appears to have been submitted in support of a motion to reconsider. R. at 834.

[15] The reference to transcript pages is less than clear. Pages 54 and 55 are the conclusion of the parties peremptory juror strikes and the judge's remarks to the jury about what the attorneys were doing; page 84 concerns the admission of photographs of victim Lorton; page 89 concerned an officer's attempt to "triage" victim Blanton to assist the incoming "medics;" pages 103–07 concern an officer's observations about both defendants and if they were injured and the nature of the injury, if any; and page 359 is a discussion of jury instructions. *See* Dkts. 28-1, 28-2, 29-1.

assistance of counsel claim rests on trial counsel's failure to call particular witnesses, expert or otherwise, we require 'a specific proffer . . . as to what an expert witness would have testified.'" *Vandross*, 986 F.3d at 452 (4th Cir. 2021) (citation omitted). "A petitioner's failure to do so 'reduces any claim of prejudice to *mere speculation* and is fatal to his claim.'" *Id.* (citation omitted).

Lastly, in the first state habeas, trial counsel submitted an affidavit averring that he had followed the leads provided by Mr. Drayton, and the alleged Geter affidavit states that Geter talked with trial counsel before trial. Dkt. 26-6 at 49. Given the lack of any proffered relevance in the Geter statement, counsel did not act unreasonably in choosing not to call her at trial. *See United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) (explaining that "which witnesses to call is a classic tactical decision left to counsel"). Claim 3 is not a substantial claim under *Martinez*, and it does not a state a claim under either prong of *Strickland*.

*Ineffective in Closing Argument*. In Claim 4, Mr. Drayton alleges "the prosecutor's comments so infected the trial with unfairness," that his counsel should have objected. Dkt. 36-1 at 6. He cites ten instances:

1) "Today and yesterday, you have heard evidence about two brothers, Michael and Lamont Drayton. Two bullies who used two weapons, a hammer and a knife, to exact their revenge for being disrespected." Dkt. 29-1 at 86.

2) "They did it because they wanted to and because they could." *Id.* at 92.

3) "Ms. Lorton told you that she saw Lamont go into the kitchen, then into the bedroom, and she later saw a knife sitting on the chair where it hadn't been before. We can infer that Lamont grabbed that knife and had it with him during the attack, even if nobody directly saw it." *Id.* at 90.

4) "He believes that he is entitled to do what he did, either for the real reason, because he was disrespected, or the reason that he has fabricated, that he was hit in the head with a hammer." *Id.* at 93.

5) "We all know if you shoot someone with a gun, you intend to kill them. If you stab them with a knife, you intend to kill them. We call this deadly force for a reason." *Id.* at 101.

6) "One blow to the head with a hammer, that alone would allow you to infer that the Drayton brothers intended to maim, disfigure, disable, or kill Mr. Blanton." *Id.*

7) "As it so happens, you are hearing Michael's case and Michael had the intent to steal. He was the member of the mob that wanted that phone. . . . And he symbolically took the phone to show her that he should have been the one making that call [to the police]." Dkt. 29-2 at 20.

8) "Even if he had been hit in the head with a hammer, and we all know that he wasn't but even if he was, that does not entitle him to revenge." *Id.* at 17.

9) "The most audacious lie, though, is his claim that this incident started when he was hit on the forehead with a hammer." Dkt. 29-1 at 96.

10) "Make no mistake, standing alone, Michael is guilty of maliciously wounding Walter Blanton and Michael is guilty of robbing Jennel Lorton." *Id.* at 87.

A prosecutor's actions constitute misconduct if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted). It "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id.* A court indulges a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689)."[P]rosecutors enjoy considerable latitude in presenting arguments to a jury, because 'the adversary system permits the prosecutor to 'prosecute with earnestness and vigor.'" *Bates v. Lee*, 308 F.3d 411, 422 (4th Cir. 2002) (quoting *United States v. Young*, 470 U.S. 1, 7 (1985)).

To that end, "[p]rosecutors have considerable leeway to strike 'hard blows' based on the evidence and all reasonable inferences from the evidence." *United States v. Sullivan*, 522 F.3d 967, 982 (9th Cir. 2008) (citation omitted); *see United States v. Matias*, 707 F.3d 1, 6 (1st Cir. 2013) (noting where "a defendant puts his credibility at issue by testifying, the prosecution can comment on the implausibility of his testimony . . . ."); *United States v. Iacona*, 728 F.3d 694, 701 (7th Cir. 2013) ("Where the evidence supports an inference that the defendant has lied, then a

27

comment in closing argument as to his credibility, including referring to him as a liar, is a hard but fair blow, as long as the argument is made based on the evidence and not a comment as to the prosecutor's personal opinion.").

In addition, in the context of a claim of ineffective assistance of counsel, "[b]ecause many lawyers refrain from objecting during opening and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct.'" *Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013); *see, e.g., Darden*, 477 U.S. at 183 n.14 (noting that defense counsel made tactical decision not to object to prosecutor's improper closing). Courts have also recognized that it is reasonable trial strategy not to object to a prosecutor's argument in front of the jury to avoid drawing undue attention to the comments. *See United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006).

After reviewing the ten instances in which Mr. Drayton alleges his counsel should have objected, the Court finds that in each of the ten instances counsel was not unreasonable for not objecting. The Court finds that each argument was supported by the evidence, including the instance where the prosecutor used the word "lie." A reasonable attorney would not have objected to that argument because it was supported by evidence and counsel would not have wanted to draw additional attention to the inconsistency in the undisputed physical evidence and Mr. Drayton's testimony.

### IV. Merits Standard of Review (Claim I)

Under the Anti–terrorism Effective Death Penalty Act of 1996 ("AEDPA"), "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States.'" *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). That is, the state court's judgment "must be "'objectively unreasonable,'" not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (citation omitted); *see Harrington*, 562 U.S. at 103 (noting a state court decision is unreasonable only if ruling is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement").

This "'highly deferential standard' . . . 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." *Lenz v. Washington*, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). AEDPA also limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits." *Pinholster,* 563 U.S. at 181. "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." *Green v. Johnson*, 515 F.3d 290, 299 (4th Cir. 2008); *see Schriro*, 550 U.S. at 473–74.

29

Claim 1 alleges that the evidence was insufficient to convict him of malicious wounding by mob or robbery by mob. Dkt. 6 at 5. The Virginia Court of Appeals issued an order affirming the convictions on the merits. Dkt. 26-2 at 32–38. Following Mr. Drayton's delayed appeal, the Supreme Court of Virginia refused the subsequent petition for appeal in a summary order and denied his petition for rehearing as well. Dkt. 26-8 at 49, 61. "When a state appellate court summarily affirms a reasoned lower-court decision, or refuses a petition for review, then under *Ylst*, a federal habeas court is to 'look through' the unexplained affirmance to examine the 'last reasoned decision' on the claim, assuming that the summary appellate decision rests on the same ground." *Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 525–26 (4th Cir. 2016) (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04, 806 (1991)). In this case, the last reasoned decision is the Virginia Court of Appeals December 21, 2020 order. The Virginia Court of Appeals decision, in relevant part, is set out above. *See supra* at 8–11.

"Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." *Wilson v. Greene*, 155 F.3d 396, 405–06 (4th Cir. 1998). Under AEDPA, sufficiency claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). As *Coleman* explained:

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

*Id.* (citations omitted). Under AEDPA, federal courts "inquire whether a state court determination that the evidence was sufficient to support a conviction was an 'objectively unreasonable'

30

application of [the standard enunciated in] *Jackson* [*v. Virginia*, 443 U.S. 307, 319 (1979)]." *Williams v. Ozmint*, 494 F.3d 478, 489 (4th Cir. 2007).

The *Jackson* standard requires a federal court to view "the evidence in the light most favorable to the prosecution," to determine if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1); *Pope v. Netherland*, 113 F.3d 1364, 1367 (4th Cir. 1997). In reviewing the sufficiency of the evidence, "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Indeed, "to overturn a state court's credibility judgments, the state court's error must be stark and clear." *Id.*

The evidence summarized by the Virginia Court of Appeals, establishes that Mr. Drayton acted in concert with his brother in the beating and robbing of the victims. The state court's decision regarding each sufficiency of the evidence issue was reasonable and fully supported by the evidence. *See supra* at 8–11. Based on that evidence, a rational trier of fact could have found Mr. Drayton guilty. The state court's decision is neither objectively unreasonable, nor is it contrary to or an unreasonable application of established federal law or based on an unreasonable determination of the facts. *See Burr v. Jackson*, 19 F.4th 395, 403 (4th Cir. 2021) (finding a state court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility for fairminded disagreement*") (quoting *White*, 572 U.S. 420). Accordingly, Claim 1 will be dismissed.

## V. Certificate of Appealability

According to Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. 11(a), Rules Governing Section 2254 Cases U.S. District Courts; *see also* 28 U.S.C. § 2253(c)(1)(A) (prohibiting an appeal to the respective court of appeals from a final order concerning a habeas corpus petition "[u]nless a circuit justice or judge issues a certificate of appealability"). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To satisfy this requirement, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Where a district court dismisses a petition solely based on procedural grounds, and does not address the underlying constitutional claims, *Slack* instructs the court to issue a certificate of appealability ("COA") when the petitioner demonstrates that "jurists of reason" would find both the petition's "claim of the denial of a constitutional right" and the district court's dispositive procedural ruling "debatable." *Id.* at 484. As to whether the procedural ruling is "debatable," *Slack* further advises that when the procedural bar present is "plain" and "the district court is correct to invoke it to dispose of the case," jurists of reason could not find "that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.*

As to whether the procedural ruling is "debatable[,]" *Slack* further advises that when the procedural bar present is "plain" and "the district court is correct to invoke it to dispose of the

32

case," "jurists of reason" could not find "that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.*

Here, Mr. Drayton's petition will be dismissed, in part, because Claims 2 through 11 are simultaneously exhausted and defaulted and because he failed to establish cause, which precluded federal habeas review. Where such "a plain procedural bar is present," this Court finds that "jurists of reason" would not and could not "find it debatable whether the district court was correct in its procedural ruling." *Id.* Thus, this Court will not issue a COA to him for Claims 2 through 11.

When the district court denies relief on the merits, a prisoner satisfies this standard by demonstrating that "reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong." *Id.* For the reasons stated above, as to Claim 1, the Court has reviewed the record and concluded that Mr. Drayton has not made the requisite showing with regard to this claim. Accordingly, the Court denies a COA for Claims 1 as well, and dismisses this petition.

Petitioner may, however, seek a COA from the United States Court of Appeals for the Fourth Circuit. Where a district court denies a COA, the petitioner "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." R. 11(a), Rules Governing Section 2254 Cases U.S. District Courts.

## VI. Conclusion

For the foregoing reasons, the Motion to Dismiss the petition, Dkt. 24, must be granted and the petition must be dismissed with prejudice. Mr. Drayton's motion for correspondence, Dkt. 17, is denied as moot and Mr. Drayton's motions for discovery, an evidentiary hearing, expansion of the record, release on bond, to amend, to appoint counsel, and motion to void ab initio, Dkts. 22, 37, 38, 40, 41, and 42, are denied. An appropriate Order shall issue.


Entered this _2nd_ day of September, 2025.
Alexandria, Virginia

                                          /s/
                              Patricia Tolliver Giles
                              United States District Judge